LAW OFFICES

# ARENSON, DITTMAR & KARBAN

420 LEXINGTON AVENUE
SUITE 1402
NEW YORK, N.Y. 10170

FACSIMILE
(212) 682-0278

TELEPHONE
(212) 490-3600

September 23, 2022

<u>**VIA ECF**</u>
Hon. Roanne L. Mann
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:   *Pierre, et al. v. Lyu., et al.*
              Case No.: 22-cv-120 (RLM)

**JOINT APPLICATION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Dear Judge Mann:

      We represent Named Plaintiffs Lesly Pierre, Kassan Doucore, Aboubacar Doumbia, and Ali Touré, along with opt-in plaintiff Kebe Bakary in the above-referenced class and collective action brought under the FLSA and NYLL. I write together with Defendants' counsel, pursuant to the Court's Order of August 15, 2022 to submit the parties' Settlement Agreement, along with the proposed Order of Dismissal. The proposed Settlement Agreement, attached hereto as **Exhibit A**, is the result of negotiations conducted through a mediator.

      Because the Complaint includes FLSA claims, the parties' Settlement Agreement requires the Court's approval. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Although Plaintiffs alleged collective and class claims in the Complaint, the proposed settlement was reached before Plaintiffs sought collective or class certification; accordingly, this Settlement Agreement applies to their individual claims only. For the reasons set forth below, the Plaintiffs and their counsel, as well as Defendants and their counsel, believe that the Settlement Agreement is a fair and reasonable resolution of the claims set forth in this Action, and respectfully request the Court's approval of the proposed Settlement Agreement.

      **I.**    **Background**

      This is an action to recover alleged unpaid overtime compensation under the Fair Labor Standards Act ("FLSA," 29 U.S.C. §§ 201, et seq.); unpaid minimum wage and overtime compensation under the New York Labor Law ("NYLL," N.Y. LAB. LAW §§ 190, et seq., §§ 650, et seq.); statutory penalties for Defendants' alleged failure to provide appropriate wage rate notices and statements as required by NYLL §195; and attorneys' fees and costs.

Plaintiffs worked at Auto Laundry Car Wash located at 1119 Atlantic Avenue, Brooklyn, New York 11216. Individual Defendants Song Rye Lyu and Nam Lyu are a married couple, and the CEO and Principal of Auto Laundry Car Wash Corporation, respectively. Plaintiffs allege that Defendants: (i) failed to pay them New York minimum wage and proper overtime premiums and (ii) failed to provide them wage notices at the time of their hire and accurate wage statements as required by NYLL § 195(1) and § 195(3), respectively. Three Plaintiffs also allege that Defendants owe them spread-of-hours pay and for off-the-clock work.

This action was commenced on January 7, 2022. Defendants answered on March 18, 2022. The Court held an Initial Conference on May 19, 2022 during which it ordered Defendants to provide time-and-pay records to Plantiffs and referred the matter to mediation. The parties selected Andrew Kimler, Esq. of Vishnick McGovern Milizio, LLP as mediator.

Following the conference and in advance of mediation, Defendants produced handwritten time sheets for Plaintiff Doucore for the period between May 2020 and January 2022. Defendants also produced handwritten weekly time sheets from July 25, 2017 through December 10, 2017 that purport to record Plaintiff Toure's hours for that time.

## II.    Mediation

A virtual mediation was held starting at 10 a.m. on August 4, 2022 and continued for most of the day. The parties primarily argued about the reliability of Defendants' records, which seemed to show that Plaintiffs worked less than what they claimed in their Complaint. Ultimately, after consultation with the plaintiffs, plaintiffs' counsel received their authorization to settle for $80,000. In light of the varying strengths of their claims and contributions to the case, the plaintiffs agreed to divide the settlement funds equally among them, despite the disparate amounts of their claims. By the close of mediation, the parties had not finalized the settlement amount and payment terms. Following exchanges of emails in the week after the mediation and with the help of the mediator, the parties reached an agreement in principle on the payment amount and terms.

## III.    The Settlement Agreement is a Fair and Reasonable Resolution of this Case

The parties respectfully represent to the Court that the proposed Settlement Agreement is a fair and reasonable resolution of a bona fide dispute, following an exchange of documents and an arm's length negotiation through an experienced mediator.

In determining whether a proposed FLSA settlement is fair and reasonable, a court considers "the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the Settlement Agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted); *see also Cohetero v. Stone & Tile, Inc.*, No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25, 2018) (endorsing the factors from *Wolinsky*).

### A. Plaintiffs' Possible Range of Recovery

While Defendants have not conceded liability on any issue and produced records that purported to show compliance with wage and hour laws, they were not able to produce wage notices for any plaintiff. They also concede that they paid Plaintiffs Pierre and Doumbia solely in cash and did not produce any wage statements for those plaintiffs. Therefore, assuming that Defendants would be found liable on those issues,[1] Plaintiffs would have recovered at least $34,400. In the aggregate, Plaintiffs were owed approximately $48,793.63 in actual unpaid wages. If Plaintiffs prevailed on all issues, they would have been entitled to approximately $151,922.25, including penalties and liquidated damages but excluding attorney's fees and interest.

### B. Avoidance of Anticipated Burdens and Expenses

The proposed settlement avoids much of the burdens and expenses of litigation. Courts weigh this factor in favor of a settlement where the parties have opted for early mediation and face full discovery, additional motion practice, and a trial if they proceed in litigation. *See Zavala Artiega v. Griffin Organics, Inc.*, No. 16 CIV. 6613 (AEK), 2021 WL 1997636, at *4 (S.D.N.Y. May 19, 2021) ("Given the extended efforts to attempt to resolve this case through mediation rather than through litigation, additional discovery would be necessary if this case were to proceed to trial; the history of this case also makes it likely that there would be further motion practice prior to any trial; and of course, the trial itself would present substantial additional burdens and expenses.")

While the parties exchanged a meaningful sample of discovery documents prior to mediation, they had not yet borne the burden of propounding and responding to formal discovery requests, let alone preparing for and taking depositions. Plaintiffs' attempts to certify an FLSA collective and/or Rule 23 class would require additional motion practice and expand the scope of discovery if successful. In addition, as further discussed below, Defendants produced records that, on their face, contradicted Plaintiffs' accounts of their hours as alleged in the complaint. While Plaintiffs had evidence that they would proffer to undermine the credibility of Defendants' records, such a dispute turning on credibility seemed destined for trial. Therefore, this factor weighs in favor of approval of the settlement.

### C. The Seriousness of the Litigation Risks Faced by the Parties

Other than Plaintiffs' claims brought under NYLL § 195(1) and the claims brought by Plaintiffs Pierre and Doumbia under NYLL § 195(3), the remainder of Plaintiffs' claims were contested by time and pay records that Defendants produced which purport to show Defendants' compliance with the wage and hour laws at issue. Only Plaintiff Pierre maintained his own records, contemporaneously recording his daily hours worked in a spreadsheet. He also maintained pay envelopes which contained notations of his total hours worked and the amount paid in the individual defendants' own handwriting. These envelopes corroborated Plaintiff

---

[1] One court in this District has held that employees do not have standing to bring Wage Theft Protection Act claims in federal court. *See Francisco v. NY Tex Care, Inc.*, No. 19CV1649PKCST, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022); *but see Zuniga v. Newmark Wood Working Grp. Inc.*, No. 20CIV2464RPKVMS, 2022 WL 3446331, at *8 (E.D.N.Y. Aug. 17, 2022) (recognizing disagreement among courts on the issue). If this Court found Plaintiffs to lack standing, then the bottom of Plaintiffs' range of recovery would have been $0.

Hon. Roanne L. Mann
September 23, 2022
Page **4** of **7**

Pierre's records rather than Defendants', which showed Pierre working far fewer hours. However, the other plaintiffs, who did not have such records, faced a serious risk that a factfinder would not credit their testimony over Defendants' records, if the Court would even find Defendants' records to be sufficiently discredited to permit those plaintiffs to bring those issues before a factfinder based on their own recollections. Of course, even Pierre faced the risk that a factfinder would find Defendants' records more credible than his. These credibility issues on material factual disputes would determine whether Plaintiffs would recover at or near the bottom of their range of recovery or at or near the top.[2]

These risks weigh heavily in support of the reasonableness of the proposed settlement. *See Lee v. Samiti Tech. Inc.*, No. 21CV1032 (CBA) (TAM), 2021 WL 7906558, at *4 (E.D.N.Y. Sept. 8, 2021) (settlement amount of 14.3% of alleged damages was reasonable given the presence of "significant factual and legal disputes"); *Lora v. To-Rise, LLC*, No. 16-CV-3604 (SJB), 2019 WL 9200752, at *3 (E.D.N.Y. Aug. 16, 2019) (Plaintiffs' litigation risks weighed in favor of settlement); *Boyle v. Robert M. Spano Plumbing & Heating, Inc.*, No. 15-CV-2899 (KMK), 2016 WL 1688014, at *5 (S.D.N.Y. Apr. 27, 2016) (same).

Besides the substantial litigation risks faced by the parties on the merits, Plaintiffs here faced an additional risk of collection even had they prevailed. The corporate defendant here is a single location car wash that employed either 9 employees (according to Defendants) or closer to 12 employees (according to Plaintiffs) at a time. Plaintiffs' asset search did not reveal the type of significant assets that would have been able to sustain a much larger judgment. Indeed, Defendants would only agree to the $80,000 amount here because half of it is to be paid out over the course of six months. Such bona fide concerns about Defendants' ability to pay a large judgment further weigh in favor of settlement. *See Montes v. 11 Hanover Grp. LLC*, No. 1:17-CV-09376 (SDA), 2019 WL 4392516, at *1 (S.D.N.Y. Sept. 12, 2019); *Escobar v. Fresno Gourmet Deli Corp.*, No. 16 CIV. 6816 (PAE), 2016 WL 7048714, at *2 (S.D.N.Y. Dec. 2, 2016).

### D. The Settlement Agreement is the Product of Arm's Length Bargaining Through an Experienced Mediator

The proposed Settlement Agreement is the product of arm's length negotiations conducted through Andrew Kimler, an experienced third-party mediator selected from this District's mediation panel. Courts find that the participation of a neutral third party supports the parties' claim that a settlement agreement is the product of arm's length bargaining. *See Carnero v. Bagel Mentsch, Inc.*, No. 1:21-CV-0781-FB-JMW, 2022 WL 3446335 (E.D.N.Y. Aug. 17, 2022), *report and recommendation adopted sub nom. Carnero v. Bagel Mentsch, Inc.*, No. 1:21-CV-0781-FB-JMW, 2022 WL 3446335 (E.D.N.Y. Aug. 17, 2022); *Vidal v. Eager Corp.*, No. 16 CV 979 (RRM) (ST), 2018 WL 1320659, at *2 (E.D.N.Y. Mar. 13, 2018).

---

[2] In light of this analysis, which highlights the strength of Plaintiffs' Wage Theft Protection Act claims ($9,400 for Pierre's and $10,000 for each other plaintiff's) relative to their other claims and Plaintiffs' calculation, discussed above, that actual wages account for less than one-third of Plaintiffs' possible recovery, the parties attribute the vast majority (80%) of the settlement amount to liquidated damages and interest.

### E. No Fraud or Collusion Exists

There was no fraud or collusion between Plaintiffs' counsel and defense counsel in reaching this agreement.

### F. The Totality of the Circumstances

The Settlement Agreement itself is narrowly tailored to this wage and hour dispute. It contains no broad releases, confidentiality provisions or non-disclosure provisions. The terms of the Settlement Agreement make clear that Plaintiffs are releasing Defendants only from any FLSA and NYLL claims that they may have as of the date the parties reached an agreement. *See Alvarez v. Michael Anthony George Const. Corp.,* 11-CV-1012, 2015 WL 3646663 at *2 (E.D.N.Y. Jun. 10, 2015); *Camacho v. Ess-A-Bagel, Inc.,* 14-CV-2592, 2014 WL 6985633 at *4 (S.D.N.Y. Dec. 11, 2014).

### IV. Plaintiffs' Attorneys Fees and Costs are Reasonable

"If attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). Under the FLSA and the NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs. *See id.* (citing 29 U.S.C. § 216(b) and NYLL § 663(1)). Courts in this District generally find that attorney's fees of 33% of the overall settlement, mirroring a one-third contingency arrangement, to be reasonable. *See Carnero*, 2022 WL 3446335 at *4; *Shamsundar v. FCS Grp. LLC*, No. 18-CV-2514 (KAM)(LB), 2019 WL 3716198, at *4 (E.D.N.Y. May 22, 2019). However, the Second Circuit has held that limiting the amount of recoverable attorneys' fees to a certain proportion of the settlement runs counter to the text and purpose of the FLSA and fee-shifting statutes in general. *Fisher*, 948 F.3d at 605.

Pursuant to the proposed Settlement Agreement, Plaintiffs' counsel will receive $26,666.65 in attorneys' fees and $839.50 in costs.[3] The aggregate recovery by Plaintiffs even after subtraction of such fees and costs ($52,493.85) exceeds the aggregate actual unpaid wages owed to them ($48,793.63). The proposed fee award should be approved because it is agreed to by Plaintiffs, is much less than Plaintiffs' counsel's lodestar on this case, and amounts to one-third of the recovery, which is in line with the standard fees awarded in this Circuit for such cases. *See Chambers v. Cone Heads Ltd.*, No. 18-CV-7823 (OTW), 2020 WL 3447964, at *2 (S.D.N.Y. June 23, 2020) (finding fees reasonable where "[t]he fees award is less than Plaintiff's counsel's stated lodestar, which is supported by billing records attached to the proposed settlement"); *Deran v. Antalia Turkish Cuisine LLC*, No. 19-CV-6833 (BCM), 2020 WL 3414890, at *2 (S.D.N.Y. June 22, 2020) (approving fee award only slightly higher than counsel's lodestar where settlement netted plaintiff most but not all of his alleged actual damages, after payment of the award to counsel); *Cardenas v. A.J. Piedimonte Agric. Dev.*, LLC, No. 1:18-CV-00881 EAW, 2020 WL 3469681, at *6 (W.D.N.Y. June 25, 2020) (finding fees reasonable where "Plaintiffs' attorneys seek only a fraction" of their lodestar amount); *Cionca v.*

---

[3] The costs incurred by Plaintiffs' counsel in this matter are: $402 for the filing fee and $437.50 for mediation. (*See* **Exhibit C**.)

*Interactive Realty, LLC*, No. 15-CV-5123 (BCM), 2016 WL 3440554, at * (S.D.N.Y. 2016) (fee award reasonable where it constituted only 36% of what attorneys actually billed).

As set forth in the time sheets attached hereto as **Exhibit B**, the attorneys' fees allocated as part of the Settlement Agreement are less than 41% of the actual amount of fees incurred, which to date amount to $66,168 based on 167.47 attorney hours.

The law firm of Arenson, Dittmar & Karban represented the Plaintiffs in this litigation from inception to settlement. As part of the representation of Plaintiffs, Mr. Arenson and his staff, *inter alia*, evaluated the case; conducted multiple rounds of in-person interviews with the Plaintiffs, prepared and filed the Complaint; engaged in document discovery; created spreadsheets for each of the five plaintiffs calculating his damages week-by-week; reviewed relevant records, including time and pay records to the extent available for each plaintiff; prepared for mediation by drafting a mediation statement on the legal and factual issues; attended mediation and engaged in the post-mediation negotiations to reach a resolution; negotiated, drafted and revised the terms of the Settlement Agreement; and drafted this application.

For the purposes of calculating the lodestar, Plaintiffs' counsel uses a rate of $700 per hour for the partner, Steven Arenson, who expended approximately 24 hours on the case; $400 for the senior associate, Avi Mermelstein, who spent 30 hours on the case; $350 for associate Elyse Patterson, who spent 100.7 hours on the case; and $250 per hour for Anna Goldstein, a junior associate, who spent approximately 8 hours on the case. Arenson is a 1986 graduate of Columbia Law School who has focused his practice almost exclusively on employment law litigation for the past twenty-seven years. Mermelstein is a 2012 graduate of Georgetown Law School who has also focused his practice on employment law. Patterson and Goldstein both graduated from Cardozo Law School, in 2014 and 2020, respectively. Patterson left our firm to join Jackson Lewis, a leading nationwide employment defense firm. Earlier this year, in granting final approval to a wage and hour class action involving a single location car wash, a court in the District of New Jersey found the hourly rates of Arenson and Mermelstein used here to be reasonable. Transcript of Decision dated January 13, 2022, 11:13–19 (ECF No. 71), *Mirabal v. Caribbean Car Wash, Inc.*, No. 19-cv-16608 (D.N.J.).

  **V.**  **Retention of Jurisdiction Post-dismissal**

As the Settlement Agreement provides for payments to be made to Plaintiffs over an extended period of time following Court approval, in order to protect Plaintiffs from possible default by Defendants, the parties request that this Court retain jurisdiction over this Action post-dismissal, for the limited purpose of enforcing compliance with the Settlement Agreement. Such retention of jurisdiction is appropriate as the case is being dismissed with prejudice. *Villalva-Zeferino v. Park Pizza, et al.*, 15-CV-6932 (S.D.N.Y. Feb. 17, 2016). The parties ask that the Court's Order of Dismissal contain express language whereby this Court retains jurisdiction over the Action for the limited purpose of enforcing compliance with the Settlement Agreement and for the limited time period until all of Defendants' payment obligations to Plaintiffs are satisfied. Such language has been required and approved to confer post-dismissal jurisdiction of the federal courts to enforce Settlement Agreements. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Porter v. Goord*, 2017 U.S. App. LEXIS 756, 2017 WL 177688 (2d Cir., 2017); *Hendrickson v. United States*, 791 F.3d 354 (2d Cir., 2015).

Hon. Roanne L. Mann
September 23, 2022
Page **7** of **7**

### VI. Conclusion

Accordingly, for the reasons set forth above, the parties jointly and respectfully request that the Court approve the parties' Settlement Agreement, dismiss the case with prejudice, and retain jurisdiction to enforce the terms of the Settlement Agreement.

Respectfully,

S/ Avi Mermelstein

cc: Yongjin Bae, Esq. (via ECF)